# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| ASSOCIATION OF AMERICAN RAILROADS, | : |
| Plaintiff, | : CASE NO. 2:23CV02096 |
| v. | : JUDGE MICHAEL H. WATSON |
| DAVE YOST, *et al*., | : MAGISTRATE JUDGE JOLSON |
| Defendants. | : |

## DEFENDANT DAVE YOST'S MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(1), Defendant Ohio Attorney General Dave Yost respectfully moves this Court to dismiss Plaintiff's Complaint for lack of standing. A memorandum in support is attached.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Michael A. Walton*
MICHAEL A. WALTON (0092201)\*
\**Counsel of Record*
BRYAN B. LEE (0090716)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Michael.Walton@OhioAGO.gov
Bryan.Lee@OhioAGO.gov

*Counsel for Defendant Dave Yost*

**MEMORANDUM IN SUPPORT**

I. **INTRODUCTION**

Plaintiff lacks standing to bring claims against the Ohio Attorney General.  Plaintiff is a trade association who advocates on behalf of railroad companies.  Plaintiff claims that Ohio Rev. Code § 4999.09, which mandates a two-person minimum crew size for trains carrying freight, violates federal law and seeks a preliminary and permanent injunction against the Defendants from "taking any action to enforce" the state law.  But Plaintiff only brings a *pre-enforcement* attack against the state law.  It alleges no active efforts by the Defendants to find it in violation of the challenged law.  In fact, the Ohio Attorney General has no independent authority to enforce the challenged state law.  Instead, PUCO must first find an individual railroad company in violation of the state law and then PUCO can ask the Ohio Attorney General to bring a collection action against the company for the violation.  The chain of events which needs to occur before the Ohio Attorney General is even implicated is too speculative to establish standing as to the Ohio Attorney General.  Thus, Plaintiff fails to allege a concrete injury-in-fact against the Ohio Attorney General, and its Complaint should be dismissed.

II. **BACKGROUND**

In 1973, Congress enacted the Regional Rail Reorganization Act ("the 3R Act"). Compl., ECF No. 1, PageID # 1, ¶ 2. "The 3R Act was designed to reorganize the railroads in those regions, bringing them under the control of a new government corporation [Conrail] that would create a plan to turn them into an economically viable railway system." *Ind. R.R. Co. v. Ill. Com. Comm'n*, 576 F. Supp. 3d 571, 575 (N.D.Ill. 2021). The 3R Act was later amended to include a preemption clause, which states,

> No State may adopt or continue in force any law, rule, regulation, order, or standard requiring the Corporation [Conrail] to employ any specified number of persons to perform any particular task, function, or operation, or requiring the Corporation to pay protective benefits to employees, and no State in the Region may adopt or continue in force any such law, rule, regulation, order, or standard with respect to any railroad in the Region.

45 U.S.C. § 797j.

In March 2023, Ohio enacted Ohio Rev. Code § 4999.09, which requires that "[a] train or light engine used in connection with the movement of freight shall have a crew that consists of at least two individuals." Ohio Rev. Code § 4999.09(B). Under the statue, the Ohio Public Utilities Commission ("PUCO") has the discretion, but is not required, to assess a civil penalty against anyone who willfully violates subsection B. Ohio Rev. Code § 4999.09(C)(1). Attorney General Yost, only when directed by PUCO, has the authority to file a collections action to collect any penalty levied by PUCO. Ohio Rev. Code § 4999.09(C)(2). Notably, Ohio Rev. Code § 4999.09 shall only be effective until "a federal law or regulation takes effect requiring a train or light engine used in connection with the movement of freight in this state to have a crew of at least two individuals." R.C. 4999.09(D). Ohio Rev. Code § 4999.09 became effective on June 30, 2023. Compl., ECF No. 1, PageID # 2, ¶ 6.

Plaintiff Association of American Railroads alleges that it is "a nonprofit trade association whose members include all of the Class I freight railroads (North America's largest freight railroads), smaller freight railroads, and passenger and commuter railroads." *Id.* at PageID # 4, ¶ 16. Its members allegedly "operate approximately 83 percent of the line-haul mileage, employ 95 percent of the workers, and account for 97 percent of the freight revenues of all railroads in the United States." *Id.* Of its members, Plaintiff specifically names "Canadian National Railway, CSX Transportation, and Norfolk Southern Railway" as members that operate in Ohio. *Id.* Moreover, it

3

claims that CSX Transportation and Norfolk Southern Railway use one-person crews for certain operations in Ohio. *Id.* at PageID # 5, ¶ 16.

Plaintiff brings its Complaint against Attorney General Yost and the members of PUCO in their official capacities. *See id.* at PageID # 1. Plaintiff's main claim is that Ohio Rev. Code § 4999.09 is preempted by the 3R Act. *See id.* at PageID # 3, ¶ 8; PageID # 18-19. Plaintiff alleges that Ohio is subject to the limitations contained in the 3R Act, including the prohibition against setting a minimum crew size. *Id.* at PageID # 19, ¶ 78-80. Therefore, Plaintiff claims that Ohio is preempted from enacting any legislation requiring a minimum work crew size, which is what Ohio Rev. Code § 4999.09 does. *Id.* at ¶ 82. Alternatively, Plaintiff claims that Ohio Rev. Code § 4999.09 is also preempted by the ICC Termination Act ("ICCTA"), 49 U.S.C. § 10501(b), and the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20106. Plaintiff alleges that ICCTA grants exclusive authority to the Surface Transportation Board "to regulate matters falling within its broad scope." Compl., ECF No. 1, PageID # 3, ¶ 9. It claims that ICCTA ""preempts all state laws that may reasonably be said to have the effect of managing or governing rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation." *Id.* at PageID # 20, ¶ 88 (quoting *Delaware v. STB*, 859 F.3d 16, 18 (D.C. Cir. 2017)). Since Ohio Rev. Code § 4999.09 is an alleged attempt to manage rail transportation, Plaintiff argues that ICCTA preempts the law. *See id.* at PageID # 21, ¶ 89. Similarly, Plaintiff alleges that the FRSA preempts Ohio Rev. Code § 4999.09 "to the extent it mandates a minimum number of crew members for helper service or remote control operations." *Id.* at PageID # 23, ¶ 99. Specifically, Plaintiff claims that the Federal Railroad Administration ("FRA") investigated whether one-person crews in the context of helper service or remote control operations and elected

not to require more than one-person minimum crew sizes for these two operations. *See id.* at PageID # 22-23.

For relief, Plaintiff requests a declaration that Ohio Rev. Code § 4999.09 is preempted by the 3R Act, as well as the ICCTA and FRSA. *Id.* at PageID # 23. Further, they ask that the Court issue a preliminary and permanent injunction to prevent the Defendants from enforcing all aspects of Ohio Rev. Code § 4999.09. *Id.*

### III. LAW AND ARGUMENT

#### A. Standard of Review

Fed. R. Civ. P. 12(b)(1) provides for dismissal of an action for lack of subject matter jurisdiction. A civil complaint must establish that the claims set forth are within the subject matter jurisdiction of the court. *See Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). The plaintiff bears the burden of demonstrating that jurisdiction exists. *Id*. at 760.

#### B. Plaintiff lacks standing to bring its claim.

Plaintiff lacks standing to bring its claim against the Attorney General. "Article III of the United States Constitution 'does not extend the judicial power to any legal question, wherever and however presented, but only to those legal questions presented in Cases and Controversies.'" (internal quotations omitted) *Fieger v. Mich. Supreme Court*, 553 F.3d 955, 961 (6th Cir. 2009) (quoting *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc)). "Article III's 'case and controversy' requirement is not satisfied, and a court therefore has no jurisdiction, when the claimant lacks standing, that is, 'a sufficiently concrete and redressable interest in the dispute.'" *Fieger*, 553 F.3d at 961 (quoting *Warshak*, 532 F.3d at 525). Therefore, "[s]tanding is the 'threshold question in every federal case.'" *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001) (quoting *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999)). Article

III standing is a question of subject matter jurisdiction properly decided under 12(b)(1). *Am. BioCare Inc. v. Howard & Howard Attys. PLLC*, 702 F.App'x 416, 419 (6th Cir. 2017).

"An organization can satisfy Article III's standing requirements by suing on its own behalf, called 'organizational standing,' or by suing on behalf of its members, called 'associational' or 'representative' standing." *Child.'s Health v. United States FDA*, No. 21-6203, 2022 U.S. App. LEXIS 19234, at *6 (6th Cir. July 12, 2022) (citing *Online Merchants Guild v. Cameron*, 995 F.3d 540, 547 (6th Cir. 2021)) (additional citation omitted). Here, Plaintiff only seeks to establish associational standing. *See, e.g.*, Compl., ECF No. 1, PageID # 5, ¶ 22 ("AAR has associational standing to bring this suit on behalf of its members because at least one of those members, including Canadian National Railway, CSX Transportation, and Norfolk Southern Railway, will be directly, adversely, and imminently affected by the Crew Size Law and thus would have standing to sue in its own right."). However, Plaintiff fails to allege associational standing as it pertains to its claims against the Attorney General.

To establish associational standing, Plaintiff must allege facts sufficient to show "its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Online Merchants*, 995 F.3d at 549 (internal citation omitted). "To establish Article III standing, a party must meet three requirements: (1) 'he must demonstrate injury in fact—a harm that is both concrete and actual or imminent, not conjectural or hypothetical'; (2) 'he must establish causation—a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant'; and (3) 'he must demonstrate redressability—a substantial likelihood that the requested relief will remedy the alleged injury in fact.'" (quotation marks omitted) *Davis v. Detroit Pub. Schs. Cmty. Dist.*, 899

F.3d 437, 443-444 (6th Cir. 2018) (quoting *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000)). "The burden of establishing standing is on the party seeking federal court action." *Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 927 (6th Cir. 2002) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992)).

Plaintiff brings a pre-enforcement action seeking declaratory and injunctive relief in which it alleges that its "members face the 'immediate or threatened injury' of enforcement actions." Compl., ECF No. 1, PageID # 6, ¶ 22 (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342 (1977)).  In some cases, "a pre-enforcement challenge may be made before the actual completion of an injury in fact."  *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001) (citing *Nat'l Rifle Assoc. of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997)). "However, 'when seeking declaratory and injunctive relief, a plaintiff must show actual present harm or a significant possibility of future harm in order to demonstrate the need for pre-enforcement review.'"  *Id.* (quoting *Magaw*, 132 F.3d at 279).  Additionally, the harm cannot be "'conjectural' or 'hypothetical.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 75 L. Ed. 2d 675, 103 S. Ct. 1660 (1983) (citing *Golden v. Zwickler*, 394 U.S. 103, 109-110 (1969); *Public Workers v. Mitchell*, 330 U.S. 75, 89-91 (1947); *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941); and *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923)).

In *Grendell*, the plaintiff, in a pre-enforcement action, sought declaratory and injunctive relief related to Ohio Supreme Court Practice Rule XIV, § 5, arguing that it violated the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution.  252 F.3d at 830.  The plaintiff argued that he had standing to bring his claims, in part, because he had previously been sanctioned under the same rule in a different case.  *Id.*  But the Sixth Circuit rejected this argument, reasoning that "'past exposure to illegal conduct does not in itself show a

present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *Id.* at 832 (quoting *Lyons*, 461 U.S. at 102). Instead, the Sixth Circuit found that plaintiff's "injury [was] highly conjectural, resting on a string of actions the occurrence of which is merely speculative." *Id.* at 833. The court continued and found that the plaintiff's purported injury required four steps in order to be sufficient to confer standing. *Id.* ("Grendell must present evidence establishing: (1) that he is bringing or highly likely to bring a lawsuit before the Ohio Supreme Court; (2) that such lawsuit is allegedly frivolous, exposing him to sanctions under Rule XIV, § 5; (3) that the Ohio Supreme Court would, in its discretion, impose such sanctions; and (4) that the imposition of those sanctions would violate due process."). The court concluded by holding that "[s]uch a chain of events is simply too attenuated to establish injury in fact, and to confer the required standing in this case." *Id.*

Like the plaintiff in *Grendell*, Plaintiff has not sufficiently alleged that any of its members have suffered a concrete injury-in-fact as it relates to the Attorney General. The only alleged injury is that Plaintiff's "members face the 'immediate or threatened injury' of enforcement actions." Compl., ECF No. 1, PageID # 6, ¶ 22 (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342 (1977)). Here, the only type of action that the Attorney General can bring is a civil collections action. Ohio Rev. Code § 4999.09(C)(2). But any such action by the Attorney General is entirely speculative. Specifically, in order for the Attorney General to bring a civil collections action under Ohio Rev. Code § 4999.09(C)(2), five distinct steps must occur. First, one of Plaintiff's members must violate Ohio Rev. Code § 4999.09(B) by operating a train or light engine used in connection with the movement of freight with a crew size of less than two people.[1] Second,

---

[1] Per the statute, "'train or light engine used in connection with the movement of freight' does not include hostler service or utility employees." Ohio Rev. Code § 4999.09(B).

PUCO would have to find that the member "willfully violate[d]" Ohio Rev. Code § 4999.09(B). Ohio Rev. Code § 4999.09(C)(1). Third, PUCO would have to, but is not required to, assess a civil penalty to the person that willfully violated Ohio Rev. Code § 4999.09(B). *Id.* Fourth, the member would have to refuse to pay the civil penalty. Fifth, PUCO would have to, but is not required to, request that the Attorney General bring a civil collections action to collect the penalty. Ohio Rev. Code § 4999.09(C)(2). If any one of these conditions is not present, e.g., that PUCO finds that the person did not willfully violate the statute or the member pays the civil penalty, then the Attorney General cannot bring a civil collections action under the clear and unambiguous language of Ohio Rev. Code § 4999.09. In other words, "[s]uch a chain of events is simply too attenuated to establish injury in fact, and to confer the required standing in this case." *Grendell*, 252 F.3d at 833. Thus, Plaintiff has failed to allege an injury in fact that is traceable to the Ohio Attorney General and therefore, Plainitff's claims against the Ohio Attorney General should be dismissed.

### IV. CONCLUSION

For the foregoing reasons, Attorney General Yost respectfully requests that this Court dismiss the claims brought against him by the Plaintiff in the Complaint.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Michael A. Walton*
MICHAEL A. WALTON (0092201)*
*Counsel of Record*
BRYAN B. LEE (0090716)
Assistant Attorneys General
Constitutional Offices Section

9

30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Michael.Walton@OhioAGO.gov
Bryan.Lee@OhioAGO.gov

*Counsel for Defendant Dave Yost*

### CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2023, the foregoing was filed with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties for whom counsel has entered an appearance. Parties may access this filing through the Court's system.

*/s/ Michael A. Walton*
MICHAEL A. WALTON (0092201)
Assistant Attorney General