UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **ASSOCIATION OF AMERICAN RAILROADS,** <br><br> Plaintiff, <br><br> v. <br><br> **JENIFER FRENCH, et al.** <br><br> Defendants. | Case No. 23-cv-02096-MHW-KAJ |

**UNITED STATES OF AMERICA'S REPLY BRIEF
IN SUPPORT OF THE CONSTITUTIONALITY OF 45 U.S.C. § 797j**

The Court should reject Defendants' constitutional challenge to Section 797j of the Regional Rail Reorganization Act of 1973 (3R Act), a preemption provision that applies to Ohio and other states in the northeast and midwest. Congress's Commerce Clause authority is not subject to the so-called "equal sovereignty" principles, and Congress had a rational basis to enact Section 797j.

**I. Equal Sovereignty Principles Do Not Constrain Congress's Commerce Clause Authority.**

Defendants concede that the Commerce Clause lacks an express requirement of geographic uniformity, Defs.' Resp. at 2, but they err in urging that there is no "prohibition to applying the equal sovereignty principles to any law enacted by Congress under its Article I Commerce Clause authority," *id.* As the United States explained in its opening brief, the Supreme Court has held that "[t]here is no requirement of uniformity in connection with the commerce power," and that imposing such a requirement "would be to impose a limitation which the Constitution does not

1

prescribe." *Currin* v. *Wallace*, 306 U.S. 1, 14 (1939); *see* USA Br. at 3. The Court has said so more than once: "[n]or does the Commerce Clause impose requirements of geographic uniformity." *Sec'y of Agric. v. Cent. Roig Ref. Co.*, 338 U.S. 604, 616 (1950). "Congress may devise, as it has done in the Sugar Act of 1948, a national policy with due regard for the varying and fluctuating interests of different regions." *Id.* Congress's decision to subject only states in the northeast and midwest to the 3R Act's preemption provision was appropriate, given the specific financial challenges facing the railroads in those regions. *See id.*

*Shelby County v. Holder*, 570 U.S. 529 (2013), which did not silently overrule *Currin* and *Central Roig Refining*, is inapposite.[1] A primary flaw in Defendants' constitutional challenge is equating the unusual federal power in the Voting Rights Act (VRA) that was at issue in *Shelby County* with the 3R Act's preemption provision. The VRA was "extraordinary legislation otherwise unfamiliar to our system," *Shelby County*, 570 U.S. at 552, but the 3R Act's preemption provision is a commonplace example of federal preemption that accords with the Supremacy Clause. And the United States has established that Congress has applied that preemption power in other statutes in non-geographically uniform ways. *See* USA Brief at 4.

Ohio's interest also is not as weighty at the state interest in *Shelby County*. A state's general police power regularly yields to the federal government's exercise of its enumerated powers under the Supremacy Clause, where that is Congress's purpose. *E.g. Morris v. Jones*, 329 U.S. 545, 553 (1947) ("[W]here there is [ ] a collision, the action of a State under its police power must give way by virtue of the Supremacy Clause."). The general state police power is not the same type of

---

[1] Given their concession that there is no textual requirement of geographic uniformity, Defendants' reading of *Shelby County* is also inconsistent with *Gibbons v. Ogden*: "[T]he power given to Congress to regulate interstate and foreign commerce is 'complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the constitution.'" *Currin*, 306 U.S. at 13-14 (quoting *Gibbons v. Ogden*, 22 U.S. 1 (1824)).

2

"extraordinary" authority that states exercise in regulating their own elections.² *Mayhew v. Burwell*, 772 F.3d 80, 95 (1st Cir. 2014); *see NCAA v. Governor of N.J.*, 730 F.3d 208, 238 (3d Cir. 2013), *abrogated on other grounds by Murphy v. NCAA*, 584 U.S. 453 (2018). (Federal Commerce Clause authority is "not of the same nature as the regulation of elections" under the Fifteenth Amendment.).

Defendants argue that the Third Circuit's decision in *NCAA* does not support the United States' argument because "the law disparately benefitted, rather than burdened, Nevada." Defs.' Resp. at 9. But burdens and benefits are two sides of the same regulatory coin. Though Defendants suggest that Congress singled out Nevada for a special benefit—the right to license sports wagering—one could as accurately say that the law burdened forty-nine states that otherwise would have been free to license sports gambling. Unequal distribution of benefits among the states would offend so-called "equal sovereignty" principles just as much as unequal distribution of burdens. Defendants' effort to distinguish *NCAA* fails.³

**II. Congress Had A Rational Basis To Enact Section 797j.**

Defendants concede that Congress had a rational basis to authorize Section 797j at the time of enactment. Defs.' Resp. at 4. The Commerce Clause requires nothing more.

Defendants baldly assert that "[t]he question in this case is not whether a rational basis existed when the 3R Act was enacted; rather the question is whether there is a rational basis *today* to find it constitutional." Defs.' Resp. at 13. That is not the test under the Commerce Clause. The

---

² The United States does not contest that Ohio exercised its police power in enacting the Crew Size Law. Defs.' Resp. at 15-17. The United States' point is that this exercise is lawfully preempted by the 3R Act's preemption provision.
³ Even if Defendants could factually distinguish *NCAA*, the Third Circuit's decision not to extend *Shelby County* to Congress's Commerce Clause authority still would not affirmatively support Defendants' attempt to so extend *Shelby County* in this case. *Contra* Defs.' Resp. at 9-10.

question is whether there was a "state of facts at the time the law was enacted" that "reasonably can be conceived that would sustain" the statute. *See Lindsley v. Nat. Carbonic Gas Co.*, 220 U.S. 61, 78 (1911); USA Br. at 7 n.3 (noting that Defendants did not raise a rational basis challenge in their motion for summary judgment, but nonetheless citing *Lindsley* to further counter Defendants' argument); *see also Gonzales v. Raich*, 545 U.S. 1, 19 (2005) (the question under the Commerce Clause is whether "Congress *had* a rational basis" to enact a statute) (emphasis added). *Cf. Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464 ("Where there was evidence before the legislature reasonably supporting the classification, litigants may not procure invalidation of the legislation merely by tendering evidence in court that the legislature was mistaken.").

Even if there was an ongoing need for the United States to demonstrate a rational basis for statutes passed under Congress's Commerce Clause authority anytime a statute is challenged—again, there is not—it would be rational for Congress to believe that a preemption provision is useful to prevent a recurrence of the employee-cost problems in the northeast and midwest that nearly caused the collapse of the railroad industry in those regions in the 1970s.

Defendants also reference the Necessary and Proper Clause and seem to suggest that if a statute is no longer "necessary," then it is unconstitutional. Defs.' Resp. at 15. But the Supreme Court "'long ago rejected the view that the Necessary and Proper Clause demands that an Act of Congress be *absolutely* necessary.'" *United States v. Comstock*, 560 U.S. 126, 134 (2010) (quoting *Jinks v. Richland County*, 538 U.S. 456, 462 (2003)) (internal quotation marks omitted). *Shelby County* did not upset that understanding. Even if Section 797j has served its purpose, Congress had a rational basis to enact the statute, and it is not the role of this Court to strike down statutes the moment they achieve their purpose.

## CONCLUSION

For the reasons stated above and in the United States' earlier brief, ECF No. 37, the Court should reject Defendants' constitutional challenge.

Dated: April 1, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

 */s/ Brian Rosen-Shaud*
BRIAN C. ROSEN-SHAUD
ME Bar. No. 006018
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
Tel: (202) 353-7667
Fax: (202) 616-8460
Email:  Brian.C.Rosen-Shaud@usdoj.gov

Mailing Address:
Post Office Box 883
Washington, D.C. 20044

Courier Address
1100 L Street NW
Washington, D.C. 20005

*Counsel for the United States of America*

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on April 1, 2024.

*/s/ Brian Rosen-Shaud*
BRIAN C. ROSEN-SHAUD